ANNA WILLIAMS, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, February 7, 1910.

1. **STREET RAILWAYS: Personal Injuries: Contributory Negligence.** Where a person gets off of one car and immediately goes behind it and runs into or gets in front of a car coming from the opposite direction and is thereby injured, he cannot recover.

2. **NEGLIGENCE: Humanitarian Doctrine.** Where there is evidence that the motorman in charge of a street car sees a man in a position of peril far enough away for him to have stopped his car at the rate of speed it was going and thereby to have prevented injuring the man, the question of the liability of the street car company is for the jury.

3. **DEATH: Penal Statute: Damages: Compensation.** Where a man is killed by the negligent operation of a street car it is not error to admit evidence as to the family of deceased, and his expectancy of life and earning capacity, section 2864 being both penal and compensatory.

Appeal from Jackson Circuit Court.—*Hon. H. L. Mc-Cune,* Judge.

AFFIRMED.

*John H. Lucas* and *Frank G. Johnson* for appellant.

(1) Where plaintiff is depending upon a single witness to establish the case and when such witness tells an irreconcilable story the court should treat it as if nothing substantial had been shown in the case. Oglesby v. Railroad, 177 Mo. 295; Spiro v. Transit Co., 102 Mo. App. 260 and cases there cited; Deane v. Transit Co., 192 Mo. 586; Payne v. Railroad, 136 Mo. 562; O'Keefe v. Railroad, 81 Mo. App. 390; Weltmer v. Bishop, 171 Mo. 110; Fanning v. Transit Co., 103 Mo. App. 151; Reno v. Railroad, 180 Mo. 482; Champagne v. Hamey, 189 Mo. 726, 727; Sanguinette v. Railroad, 196 Mo. 494. (2) The deceased's own negligence barr-

141 App.—40

ed the right to a recovery. Hornstein v. Railroad, 195 Mo. 440; Giardina v. Railroad, 185 Mo. 330; Ross v. Railroad, 125 Mo. App. 614; Weber v. Railroad, 100 Mo. 194; Deane v. Transit Co., 192 Mo. 575; Boring v. Railroad, 194 Mo. 541; Ries v. Transit Co., 179 Mo. 1; Culbertson v. Railroad, 140 Mo. 35; Reno v. Railroad, 180 Mo. 469; Moore v. Railroad, 176 Mo. 528. (3) The court erred in instructing the jury to consider the earning capacity, etc., of the deceased. Casey v. Transit Co., 116 Mo. App. 235; Casey v. Transit Co., 205 Mo. 723; Railroad v. Tegnor, 28 So. 510; Crohn v. Telephone Co., 131 Mo. App. 320; Aley v. Railroad, 211 Mo. 482; Railroad v. Tegnor, 28 So. 510, 125 Ala. 593; Casey and Wife v. Railroad, 55 Mass. 480; Smith v. Birmingham, etc., Co., 147 Ala. 702; 41 So. 307. (3) The verdict was so against the evidence that it could only have been reached by bias and prejudice and the court erred in not setting it aside. Turrette v. Greenwell, 92 Mo. 120; Chouquette v. Railroad, 152 Mo. 257; Gage v. Travick, 94 Mo. App. 307; Cook v. Railroad, 94 Mo. App. 417; Meier v. Proctor & Gamble Co., 81 Mo. App. 410; Kennedy v. Transit Co., 103 Mo. App. 1; Lehnick v. Railroad, 118 Mo. App. 611; Spohn v. Railroad, 87 Mo. 84; Price v. Evans, 49 Mo. 396.

*Beardsley, Gregory & Kirshner* for respondent.

(1) Under the evidence, therefore, the plaintiff was entitled to go to the jury under the humanitarian doctrine. Rectenwald v. Railroad, 121 Mo. App. 595; Eppstein v. Railroad, 197 Mo. 720; Heinzel v. Railroad, 213 Mo. 118; White v. Railroad, 202 Mo. 564; Everett v. Railroad, 214 Mo. 94; Abbot v. Railroad, 121 Mo. App. 582; Cole v. Railroad, 121 Mo. App. 612; Waddell v. Railroad, 113 Mo. App. 680. (2) Section 2864, R. S. Mo. 1899, is compensatory as well as remedial. Coover v. Moore, 31 Mo. 574; Philpott v. Railroad, 85 Mo. 168; King v. Railroad, 98 Mo. 239; Marsh v. Railroad, 104 Mo. App. 582.

BROADDUS, P. J.—This is a suit by plaintiff, as the widow of David F. Williams, to recover damages for his death caused by the alleged negligence of defendant in the operation of one of its street cars.

On the 30th day of November, 1906, the deceased was a passenger on one of defendant's cars operated on Fifteenth street in Kansas City, Missouri. He was struck and injured at the intersection of Fifteenth street and College avenue. Fifteenth street runs east and west, College avenue runs north and south. There is a jog in College avenue at said intersection. That portion of the avenue north of Fifteenth street is located east about its width from the point of its intersection on the south of said street. The avenue on the north is sixty feet wide, that on the south fifty feet wide.

The car on which deceased was a passenger was going east. Plaintiff's evidence is as follows: A witness by the name of Homer Yates was a passenger on a car going west at the time mentioned and saw what occurred. He testified that he was standing in the rear vestibule, and noticed that the car going east stopped at College avenue, and saw a man get off; that where it stopped its rear end was about on the east line of College avenue north as shown by a plat which was before him; that he next noticed the party who got off was crossing diagonally northwest across the street; that he came from around behind the car; that where he first saw the man get off the car, he was probably seventy-five or one hundred feet west of Indiana avenue; that he saw him until he was against the car; and that at the time he was looking out of the side window of the vestibule, and did not see the man just at the moment he was struck. Witness was asked: "Well, what did the motorman do towards stopping the car? A. I don't know whether he made any special effort. Q. Well, until the time when he struck the man do you know that he did anything? A. No, sir. Q. So far as you know he didn't do anything? A. Not to my

knowledge." He testified that the car went about fifty yards after it struck the man; that he saw the man after he was struck; that he was lying about here, indicating on the plat, which would be about on a line with the east line of College avenue on the south and with the west line of the avenue on the north; that he was lying with his head to the south and his face to the east, with his arm under his head, and with his feet across the north rail of the south track; that he was removed from the place at the request of witness to a drug store after having lain there for about ten minutes; and that he noticed at the time that his skull was crushed—forehead and sides of the head—and his limbs broken.

Witness further stated that after the man got from behind the car and started across the street he was walking rapidly; that he, the witness, did not see him look around; that when he first saw him he was about one hundred yards in front of the car that struck him. Q. "How far did he go from the time that you first saw him until you last saw him? A. Why, he would have had to have gone about forty feet from the point he alighted from the car to the point where he was struck. Q. And this man when he did get off, started on a run towards the other track behind the car he alighted from? A. Yes, he disappeared immediately. Q. And you didn't know, of course, when he first disappeared behind the other car—the car going east—you didn't know then what his intentions were? A. No. Q. But when it turned out and you saw him come from behind the other car, then you saw him go towards the track your car was on, then immediately you realized that unless the car made a quick stop there would be trouble? A. Yes, sir." The witness stated that the point of contact between the man and the car was the corner of the car. On further questioning witness stated that the car he was on when he first saw the man was about the distance of the width of three stores twenty-five to thirty-five feet in width each, east of Indiana avenue.

It was shown that it was a rainy day and that it was raining at the time, and that at the place the grade was upward. A witness, named Nichols, who had experience as a motorman on cars of like size, construction and equipment, testified that with the use of the air brake on these cars, on a track with a slight upgrade, where the rain had been falling, a car going at the rate of ten or fifteen miles an hour could be brought to a dead stop in from ninety to one hundred feet.

Other witnesses stated that when deceased got off his car it was rainy and when he started to go across the street he ducked his head.

The evidence of defendant tends to show that the motorman in the car going west commenced ringing the bell before it met the car going east and continued ringing it until deceased was struck; and that he was struck about the west line of south College avenue. Several witnesses so testified. The defendant's motorman testified, that when he first saw deceased, "he was right up next to my car, right in the space between the two tracks;" that at the time he saw him, he had just come from behind the other car; that he was not further than two or three feet; that he did not have time to stop his car before he struck him; that when he was half way between Indiana and College avenue he had thrown off his power and was running at the rate of about fifteen miles an hour.

The court admitted evidence of the family of deceased showing his expectancy of life and earning capacity.

The plat in evidence shows that the distance between Indiana avenue and the east line of College avenue on the north is two hundred and seventy feet, to east line on the south three hundred and eighteen feet and to the west line fifty feet further.

The jury returned a verdict for $3500, and defendant appealed from the judgment.

At the close of plaintiff's evidence and all the evidence defendant offered a demurrer to plaintiff's case which the court refused to give.

The premises upon which defendant relies is, that "where a person gets off of one car and immediately goes behind it and runs into or gets in front of a car coming from the opposite direction and is thereby injured" he cannot recover. [Giardina v. Railroad, 185 Mo. 330; Hornstein v. Railways Co., 195 Mo. 440.]

If this case is to be determined alone upon defendant's testimony the plaintiff would not be entitled to recover under the above authorities; but when, as here, there was evidence tending to show that when deceased was first seen in a position of peril he was in plain view of defendant's motorman at a sufficient distance away for the motorman to have stopped his car at the rate of speed he was going, in time to have avoided injuring him, it was a question for the jury. The deceased was going towards the north track with his head ducked to shield himself apparently from the rain, seemingly unmindful of the approaching car. Had defendant's motorman been on the lookout he could not have failed to notice that plaintiff was unmindful of his danger. The distance at the time according to the evidence of the witness Yates as he explained it, by the plat, was over two hundred feet from the motorman to the place where deceased was struck.

It is true plaintiff's case depends almost entirely upon the evidence of Yates. But he appears to have been a man of more than ordinary intelligence, strictly impartial, clear and consistent in his statements and evidently telling what he believed to be the truth. There was, therefore, substantial evidence before the jury upon which they were authorized to find the verdict.

The case was submitted to the jury upon the humanitarian doctrine that notwithstanding the deceased negligently placed himself in danger, yet if the motor-

man saw his peril or could have seen it by looking in time to have avoided striking him, he was guilty of negligence. And such failure to exercise ordinary care upon the part of the motorman eliminated the negligence of deceased and is characterized as a wanton act. [Everett v. Railroad, 214 Mo. 54; Cole v. Railroad, 121 Mo. App. 605; Ross v. Railroad, 113 Mo. App. 600.] The time will come when corporations and persons operating dangerous instrumentalities on the streets of populous cities, will by law be held to the highest degree of care. The safety and the lives of persons who have equal right to the use of such street will demand that such agents of danger be utilized with more than ordinary care.

We do not attach much importance to the fact that the motorman rang his bell, as the deceased did not hear it, or if he did he must have confused it with the ringing on the other car as they were both in the same direction from him at the time. Something more was required under the circumstances.

It is contended that the court committed error in admitting evidence showing family of deceased, his age and expectancy of life, and earning capacity. That the section 2864, Revised Statutes 1899, as amended by session acts of 1905, is punitory and not remunerative. The authorities relied upon by defendant do not support his contention. In Casey v. Transit Co., 116 Mo. App. 235, it is held that the statute is both penal and compensatory. And so it is held in Crohn v. Telephone Co., 131 Mo. App. l. c. 318.

The section has been frequently construed and held to be both punitive and compensatory. [Philpott v. Railroad, 85 Mo. 164; King v. Railroad, 98 Mo. 235; Marsh v. Railroad, 104 Mo. App. 577.] It follows for obvious reasons, therefore, that there was no error in admitting the evidence in question.

Finding no error in the record the cause is affirmed. All concur.