McGILL *v.* MILLER.

Opinion delivered April 6, 1931.

*Atkins & Stewart,* for appellant McGill; *Cockrill & Armistead,* for appellant Gazette Publishing Co.

*King & Whatley* and *McKay & Smith,* for appellee.

SMITH, J. In March, 1930, a cause was tried in the Lafayette Circuit Court, wherein the administrator of the estate of J. W. Miller sought to recover upon a policy of insurance which had been issued to his intestate. The controlling question in the case was the one of fact whether the insured had committed suicide. The insurance company, in support of its plea that the insured had died by his own hand, offered testimony tending to show the involved condition of the insured's affairs as sheriff of the county and his depression on that account. Certain letters were read in evidence which the deceased

wrote immediately before his death which were addressed to a woman under the name of Miss Trussell. Portions of these letters are set out in the opinion of this court rendered upon the appeal from the judgment of the trial court in that case. *Home Life Ins. Co.* v. *Miller,* 182 Ark. 901, 33 S. W. (2d) 1102.

In one of these letters addressed to Miss Trussell the writer accused two citizens of the county of dishonest conduct towards him, and he charged his daughter Georgia with lack of concern and sympathy for his distress. These letters were read in evidence at the trial, a report of which was sent to the Arkansas Gazette at Little Rock by S. D. McGill, its local correspondent. In the report of the trial as it appeared in the Gazette, it was recited that Miller, the insured, had charged the two men above referred to and his daughter Georgia with having robbed him. The letters contained no such charge as to his daughter, and the testimony leaves in doubt the question whether the mistake was made by McGill in his report of the trial or by the "rewrite editor" in the Gazette office.

The article containing the false charge that Miller had accused his daughter of robbing him was published in the Gazette on March 26, 1930, and on June 25 thereafter this suit was filed in the Lafayette Circuit Court to recover damages, both compensatory and punitive. The Gazette and McGill, its correspondent, were both made parties defendant to this suit. On July 23, 1930, a news item was published on the first page of the Gazette in which the error in the article of March 26 was pointed out and regret expressed for its publication.

After filing the complaint summons was served on the Gazette in Little Rock, Pulaski County, the county of its domicile, and a return was made by the sheriff of Lafayette County upon the summons to McGill which recited that it had been served "by delivering a true copy of same to Mrs. S. D. McGill at the usual place of abode of the within named S. D. McGill—she being a member of his household and above 16 years of age."

Motions to quash the service were filed by both the Gazette and McGill, the point being raised in each motion that McGill was not a resident of Lafayette County, and, inasmuch as the Gazette had its domicile in Pulaski County, there was no authority to maintain the suit in Lafayette County.

Upon the hearing of these motions McGill testified as follows. He had resided in Lafayette County until the latter part of March, 1930, at which time he removed to Little Rock, where he had since resided and had been living for about three months before the institution of the suit. He had obtained permanent employment in Little Rock, and expected to continue to make that city his home. Prior to his removal to Little Rock he had resided in Lafayette County since 1902, and he served as a member of the jury at the March term of the court. He owned a home in Lafayette County, where his wife still resided, but the home in that county was for sale, and his wife was only living there until the house could be sold. He left Lafayette County with the intention of making Little Rock his permanent home in March, and was living in Little Rock when the copy of the summons was served on his wife in June, and his residence in Little Rock had continued to the time of the trial in August, 1930. McGill further testified in the most unequivocal manner that when he left Lafayette County it was with the intention of becoming a resident of Pulaski County, and that intention had been carried into effect, although his wife and youngest child were still living in Lafayette County and would continue to do so until his home there was sold.

McGill admitted that after his removal from Lafayette County he had paid the taxes assessed against him in that county before his removal, but this, of course, was a proper thing for him to do, even though there had been no question about the change of his residence. He also stated that, if he had been in Lafayette County at the time of the election, he would have voted there, but he was not in that county when the election was held, and he did not vote there, but did vote at the election in Pulaski

County. He did not vote for any candidate for county offices, but in that connection stated he had been in the county for only six months.

The court overruled the motions to quash the service, and the case of *DuVal* v. *Johnson,* 39 Ark. 182, is relied upon to sustain that ruling. That was a case of substituted service, the summons having been served at the usual place of abode upon the wife of a defendant who had left the State. It was there said that it would be difficult to formulate distinct definitions of "residence" and "usual place of abode," and that one temporarily absent from his residence or usual place of abode might be served by leaving a copy of the summons with some member of his family of sufficient legal age living at the residence or usual place of abode of the resident who was temporarily absent. The facts in that case were that the summons was served in 1856, and a judgment was rendered thereon in 1861, and the proceeding to vacate the judgment was not instituted until 1875. It is recited in the opinion that the judgment defendant went to California in 1854, and had returned in 1857, "without any intention whatever to change his residence." The defendant in that case never questioned the sufficiency of the service, and it was raised by his children after his death.

We are, therefore, of the opinion that the DuVal case, *supra,* is not controlling here, for the court there stated the fact to be that the defendant left this State without any intention of changing his residence, and service upon a member of his family at his usual place of abode was therefore in conformity with the statute of this State.

Here, however, the facts which we have recited are undisputed, there being no testimony whatever upon this question except that of McGill, and the conclusion to be deduced therefrom is one of law, and we are therefore not bound by the finding of the trial court that the service was sufficient. The sufficiency of testimony to support even the verdict of a jury, where the testimony is undis-

puted, is a question of law for the court. *Catlett* v. *Ry.,* 57 Ark. 461, 21 S. W. 1062; *Pine Bluff Heading Co.* v. *Bock,* 163 Ark. 237, 259 S. W. 408.

The law of this feature of the case is well settled, and is to the following effect. One's usual place of abode, in its ordinary acceptation and in the sense used by the statute, means the place where a person lives or has his home, that is, his fixed permanent home; the place to which he has—whenever he is absent—the intention of returning.

At § 6 of the chapter on Domicile in 9 R. C. L., p. 542, it is said: "The general rule is that domicile is changed from one place to another, or one State to another, only by the abandonment by a person of his first place of domicile with the intention not to return, and by taking up his residence in another place with the intention of permanently residing in that place. In other words, to effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home; and the acts of the person must correspond with such purpose."

Applying these principles to the undisputed testimony in this case, we are of the opinion that McGill was a resident of Pulaski County, and not of Lafayette County, at the time of the service upon his wife in the latter county, and that such service upon him was therefore insufficient, and, this being true, it necessarily follows that the service upon the Gazette in Pulaski County was insufficient to require it to appear and answer in the Lafayette Circuit Court.

McGill testified that he left Lafayette County three months before the institution of this suit, and that he removed to Pulaski County, where he had obtained permanent employment, with the intention of residing there permanently, and that he was attempting to sell his former home in Lafayette County, and intended to re-

move his family to Pulaski County as soon as a sale was effected, and in the meantime he had established a place of abode at an address which he stated in Little Rock.

It must be remembered that a man has the absolute and unqualified right to change his place of abode when he pleases, for any reason which prompts him so to do, and that he does change his place of abode when he removes from one place, with the intention of abandoning it as his place of abode, to another place, where he expects to abide, without having the intention of returning to the place from which he removed.

In the case of *Smith v. Union County,* 178 Ark. 540, 11 S. W. (2d) 455, it was held that the personal property of an attorney who was residing in Union County and practicing law there should be assessed for taxation in that county, rather than in another county where he also had a law office and a residence which he called his home. In so holding we said: "Residence, as used in § 9890, Crawford & Moses' Digest" [which section provides that every person 'shall list the real property of which he is the owner, situated in the county in which he resides, the personal property of which he is the owner, * * *, whether in or out of said county or State,'] means the place of actual abode, and not an established domicile or home to which one expects to return and occupy at some future time."

We conclude therefore that the circuit court of Lafayette County did not acquire jurisdiction of this cause of action, and that the service should be quashed and the cause of action dismissed, and it is so ordered. *Fidelity Mutual Life Ins. Co. v. Price,* 180 Ark. 214, 20 S. W. (2d) 874.

HART, C. J., MEHAFFY and BUTLER, JJ., concur in reversal, but dissent from judgment of dismissal.

MEHAFFY, J., (dissenting). Mr. Chief Justice HART, Mr. Justice BUTLER and the writer agree that the case should be reversed and remanded for the error of the trial court in refusing to admit certain testimony, but

we do not agree with the majority in holding that the case should be dismissed. Mr. McGill testified that he had moved to Little Rock the latter part of March, 1930, but he also testified that he owned his home in Lafayette County and that he had lived in Lafayette County for about 28 years; that his family was still living in the home in Lafayette County not only at the time of the service of the summons but also at the time of the trial. He also testified that his family continued to live in Lewisville, Lafayette County, until he could sell his home.

According to his testimony, he did not intend to move his family to Little Rock until he could sell his home. He served on the jury in Lafayette County in March, 1930. He testified at the time he was taken on the jury that he was a citizen of Lafayette County. He testified that he had decided in the early part of the year to move to Little Rock. If he had contemplated moving away from a home where he had lived for 28 years, is it not reasonable and probable that some member of the jury with whom he served would have known about it and would have been called to testify?

So far as the evidence shows none of his neighbors nor any other person ever heard of his intention to move. There is no evidence that he ever told any one. There is no evidence that he offered his home for sale or that he advertised it for sale or that he arranged with or spoke to any real estate agent or other person to try to sell his home.

He says he voted in Pulaski County after he came to Little Rock, but he voted for State officers only. He did not vote for county officers. He testified that, if he had been in Lafayette County, he would have voted there. I think his vote in Pulaski County may be explained by saying that many citizens think they have a right to vote for the State officers anywhere they may be in the State.

The majority opinion states that he testified that he had not lived in Pulaski County six months when he voted there. He did not state this, however, as an explana-

tion of why he voted for State officers only. He had said nothing about this, but the appellant's attorney asked him after he had testified that he voted for State officers in Pulaski County and would have voted in Lafayette County if he had been there: "If he had lived in Pulaski County six months when he voted?" And he said "No"; but he was not asked if that was the reason he voted for State officers only. No one testified on this question but appellant McGill.

The only question is the intention and good faith of McGill. We recently said: "According to the testimony introduced by appellant, which must be regarded as disputed on account of the interest of the witnesses testifying in the result, and on account of the contradictory circumstances, etc." *Walker* v. *Eller,* 178 Ark. 183, 10 S. W. (2d) 14.

"It may be said to be a general rule that where an unimpeached witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established, and a verdict directed based on such evidence. But this rule is subject to many exceptions, and where the witness is interested in the result of the suit or facts are shown that might bias his testimony, or from which an inference may be drawn unfavorable to his testimony or against the facts testified to by him, then the case should go to the jury." *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764; *Oyler* v. *Simple,* 163 Ark. 620, 260 S. W. 744; *American Ry. Express Co.* v. *H. Rouw Co.,* 174 Ark. 6, 294 S. W. 416; *Nelson* v. *Mo. Pac. R. Co.,* 172 Ark. 1053, 291 S. W. 66; *Gibson Oil Co.* v. *Sherry,* 172 Ark. 947, 291 S. W. 66; *Poinsett Lumber Mfg. Co.* v. *Traxler,* 118 Ark. 128, 125 S. W. 522; *Paragould & M. Rd. Co.* v. *Smith,* 93 Ark. 224, 124 S. W. 776; *St. L. Sw. Ry. Co.* v. *Trotter,* 89 Ark. 273, 116 S. W. 227; *Hankinson Lynn Gas, etc., Co.,* 175 Mass. 271, 56 S. W. 604;

*Bank of British North America* v. *Delafield,* 81 N. Y. 410, 27 N. E. 797.

"A well connected train of circumstances is as cogent of the existence of a fact as any array of direct evidence, and frequently outweighs opposing direct testimony." 23 C. J., p. 48.

There is of course no dispute about McGill being interested in the result of the suit. He was a defendant and was sued for $35,000 damages. Authorities above hold that, if he was interested in the result of the suit, his testimony must be regarded as disputed, that it is a question of fact for the jury. Not only was Mr. McGill interested, but the circumstances at least tend to show that he had not abandoned his home in Lewisville. Before the statute permitting parties to suits to testify, the intention and good faith of a party could only be proved by circumstances. Since the enactment of the statute the party may testify as to his intention, but his testimony is regarded as disputed. That is, it is a question of fact for the jury. In the very nature of things it is impossible to contradict by direct testimony the statement of a witness as to his intention or good faith. The testimony of an interested party as to his intention or good faith, although uncontradicted, is not conclusive, and, if inconsistent with his conduct, may be rejected. 10 R. C. L. 1107; *Shepherd* v. *Morgan,* 108 N. Y. S. 379.

The majority opinion says that the case of *DuVal* v. *Johnson,* 39 Ark. 182, is not controlling here "for the court there stated the fact to be that the defendant left this State without any intention of changing his residence." Johnson went to California in April, 1854, and returned in August, 1857. He was gone more than three years. The summons in that case was served at his residence in Sebastian County, Arkansas. It is true that the court said that defendant left this State without any intention of changing his residence, but it also said: "There might perhaps be something serious in this objection, if he had taken his whole family away, and closed

the house, or rented it to a neighbor, and the notice had been affixed to the door or otherwise left there."

If Mr. McGill had taken his family with him to Little Rock and advertised his home for sale, or placed a "For Sale" sign on the house and had conducted himself in such a manner that the fact of his intention to change his residence would have been known to his neighbors, we would have a very different question. It would still, however, be a question of fact.

The opinion of the majority says that whether McGill had changed his residence is a question of law, and for that reason this court is not bound by the trial court's decision. It may be conceded that, if it is a question of law and not a question of fact, we would not be bound by the decision of the trial court. I think the declaration of the majority is in direct conflict with every former decision of this court on this question. In the limited time I have had I have been unable to find any decision of this court that supports the declaration of the majority that this is a question of law, and none are cited in the opinion. The majority opinion cites 9 R. C. L. 542 on the question of intent to change domicile. In the same volume, page 556, the question of evidence is discussed. It is there said: "The determination of domicile, it has been said, is usually a mixed question of law and fact, while the question as to residence is one of fact alone." 9 R. C. L. 557.

In the case of *DuVal* v. *Johnson, supra,* the court held that residence and usual place of abode meant the same thing. Therefore the question of one's usual place of abode is a question of fact alone. If it is a question of fact, and I think, under all authorities including our own decisions, it is, then the finding of the trial judge is conclusive.

There is an unbroken line of decisions of the court to the effect that the testimony of a party to a suit is not to be considered as uncontradicted and also that the finding of the trial judge on questions of fact is as conclusive

as the finding of a jury. The following are a few of the cases so holding: *Vinson* v. *Wooten,* 163 Ark. 170, 259 S. W. 366; *Creasey Grocery Corp.* v. *So. Mercantile Co.,* 169 Ark. 1046, 277 S. W. 513; *Staggs* v. *Joseph,* 158 Ark. 133, 249 S. W. 566; *St. L. S. W. Ry. Co.* v. *Mulkey,* 100 Ark. 71, 139 S. W. 643, Ann. Cas. 1913C, 1339; *Little River Co.* v. *Buron,* 165 Ark. 335, 265 S. W. 61; *Cody* v. *Pack,* 135 Ark. 445, 205 S. W. 819; *Matthews* v. *Clay County,* 125 Ark. 136, 188 S. W. 564; *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, 7 L. R. A. 831; *Schuman* v. *Sanderson,* 73 Ark. 187, 83 S. W. 940. There are many other decisions of this court to the same effect, and I know of none to the contrary. It is not a question of what we believe or what we would find. The finding of the trial judge is conclusive here.

The trial judge sees the witness, observes the demeanor of the witness on the stand, his willingness or unwillingness to testify, and has many opportunities to judge the credibility of the witness that this court does not have. The trial judge must take all these things into consideration, as well as the interest of the witness in the result of the lawsuit, in passing upon the credibility of the witness and the weight to be given to his testimony.

I think we are bound by the finding of the trial judge, and that the case should be remanded for a new trial.

Mr. Chief Justice HART and Mr. Justice BUTLER agree with me in the conclusions herein reached.