HUSBAND *v.* CROCKETT.

4-5003

Opinion delivered April 11, 1938.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.

*Ward & Reeves* and *Frank C. Douglas,* for appellees.

SMITH, J.   F. L. and Edna Y. Husband, who are husband and wife, executed, on February 11, 1928, their joint note to Hattie S. Crockett for the purchase price of certain lands located in the Osceola district of Mississippi county.   The implication from the testimony is, that the title was taken in the name of Mrs. Husband, but we do not regard this fact as of controlling importance.   A deed of trust was executed by the purchasers to secure the payment of the note, which was for the sum of $1,690, and upon default in payment a foreclosure suit was filed in the Osceola district of the county.   A decree of foreclosure was rendered without any answer having been filed, pursuant to which the land was sold by the commissioner appointed to make the sale for the sum of $500.   The sale was made October 25, 1930, and the report thereof was approved, as was the commissioner's deed.   There was a deficiency judgment for the

balance due after the proceeds of the foreclosure sale had been credited thereon.

Dr. and Mrs. Husband lived in Blytheville, which is in the Chickasawba district of Mississippi county, and resided in a hotel which they formerly owned. The doctor had his office on the ground floor of the hotel and lived in rooms on the second floor. Mrs. Husband owned other lands in Arkansas, and also owned lands in Pemiscott county, Missouri.

Mrs. Crockett brought suit in Missouri on this deficiency judgment at the March, 1936, term of the Pemiscott county circuit court. Dr. Husband made no defense, but his wife defended upon the ground that the judgment against her had been rendered without service of process upon her, and that the judgment had been rendered in the Osceola district of Mississippi county, whereas, while a resident of that county, she had resided in the Chickasawba district thereof, in which last named district the summons purported to have been served.

The circuit court in Missouri rendered judgment against Dr. Husband for the amount of the Arkansas judgment, but dismissed the case against Mrs. Husband. In so doing the court made certain findings of fact and declarations of law. The court was of the opinion that the personal judgment was rendered against Mrs. Husband without jurisdiction of her person in the Osceola district of Mississippi county, even though she had been served with summons while residing in the Chickasawba district thereof; but the court further found that Mrs. Husband had not been served with summons, and that the personal judgment against her was void for that reason.

Subsequent to this judgment of the Missouri circuit court, Mrs. Crockett caused an execution to be issued by the clerk at Osceola, which was levied upon certain lands and chattels belonging to Mrs. Husband in Mississippi county.

On February 26, 1937, Mrs. Husband filed in the Osceola chancery court a motion to vacate and set aside the original decree of foreclosure and to quash the exe-

cution which had been levied upon her property, for the reason that the judgment and decree had been rendered without service upon her, and that she was not advised of the rendition of this decree until about January 1, 1936. She alleged that the lands had been sold at the foreclosure sale for a grossly inadequate price. The chancellor dismissed as being without equity the motion to vacate the foreclosure decree and sale, and from that decree is this appeal.

In our opinion the finding of the chancellor that the decree was not rendered without service upon Mrs. Husband is not contrary to the preponderance of the evidence; nor do we think that the judgment of the circuit court of Missouri is conclusive of that issue; nor do we think that the chancery court of the Osceola district of Mississippi county was without jurisdiction to render personal judgment against Mrs. Husband upon service of process had upon her in the Chickasawba district of Mississippi county.

The return of the sheriff upon the writ of summons in the original foreclosure proceeding reads as follows: "State of Arkansas, county of Mississippi— "On the 19th day of August, 1930, I have duly served the within writ by delivering a copy and stating the substance thereof to the within named F. L. Husband and Edna Y. Husband, at her usual place of abode in the city of Blytheville, Arkansas, with F. L. Husband, her husband, a member of her family over the age of fifteen years, as I am herein commanded.

"W. W. Shaver, Sheriff.
"By A. Lindsey, D. S."

The testimony is to the effect that at the time of the date of this return of service a partial estrangement had grown up between Dr. Husband and his wife and they had agreed to live apart, and Mrs. Husband had returned to her former home in the state of Mississippi, where she actually was on August 19, 1930, and where she continued to reside until September, 1931. No divorce was contemplated and neither party filed suit for that purpose. They were later reconciled to each other and are now

living together in the same hotel where they formerly resided. As a matter of fact, they lived apart about a year and a half. The testimony is very clear that during this interval their relations were not entirely severed. A correspondence between them was conducted. Mrs. Husband made several trips to Blytheville, and on each occasion stayed at the hotel where Dr. Husband then resided and where both had formerly lived. Mrs. Husband owned extensive landed interests both in Mississippi county, Arkansas, and in the state of Missouri, and Dr. Husband remained in charge of these lands as the agent of his wife, renting them out and collecting the rents thereon. In October, 1930, on the occasion of one of these return visits to Blytheville by Mrs. Husband, she and her husband talked over her affairs, and he advised her that she was losing her property through mortgage foreclosures and tax sales. It does not appear whether the suit of Mrs. Crockett was discussed. Mrs. Husband spent about four days at the hotel during this visit. Mrs. Husband was asked if, during her visits to Blytheville and the stay at the hotel where her husband resided, she and her husband cohabited together, and she answered: "That comes under the head of our business," although, after further cross-examination, she stated they had not.

We think this testimony supports the finding that the relation of husband and wife subsisted when the summons was served, and that the hotel was their place of residence, as it had formerly been, and now appears again to be.

Section 1360, Pope's Digest, provides how service of summons may be had, and paragraph three of that section reads as follows: "By leaving a copy of such summons at the usual place of abode of the defendant, with some person who is a member of his family over the age of fifteen years."

Dr. Husband was, of course, a member of his wife's family within the meaning of this section, and no insistence is made that he was not then over fifteen years of age. The statute makes no distinction as to the character of the place of abode, and requires only that it shall

be the usual place of abode. The fact that Dr. Husband had an office in the hotel would make no difference if it was also his usual place of abode and that of his wife. That it had been and was then the doctor's usual place of abode is undisputed.

In the case of *Shepard* v. *Hopson,* 191 Ark. 284, 86 S. W. 2d 30, we said: "In *DuVal* v. *Johnson,* 39 Ark. 182, it was held that the term 'usual place of abode' is synonymous with 'residence.' It is generally understood that one's usual place of abode or residence is where (if he is a married man) he abides with his wife and family. Therefore the house in which one's wife and children are living is presumed to be a man's 'usual place of abode' within the meaning of the statute, although he may be absent at the time of service of process, and such absence may have continued over a considerable period of time."

In this case of *Shepard* v. *Hopson, supra,* service upon the husband was held sufficient where it consisted in delivering a copy of the summons to the wife, although the husband was then and for some time had been absent from the home. The service in that case was held good although when the summons was delivered to the wife she was in a cotton field about two hundred feet away from the house. See, also, *McGill* v. *Miller,* 183 Ark. 585, 37 S. W. 2d 689.

We have a number of cases on the subject which have cited and approved the case of *DuVal* v. *Johnson, supra.* The second headnote in that case reads as follows: "Under the statute a summons could be served on a defendant by leaving a copy at his residence with a white person of the proper age, though he had been absent in another state for years, but without intention of changing his residence." After an extended discussion of this method of serving process, Judge EAKIN there said: "It is adopted as the most certain mode in ordinary cases of conveying intelligence to an absent resident, and as essential to the rights of those who have just claims against him, which they desire to enforce without unreasonable delay. All laws are framed with a

view to their general operation. Exceptional hardships may happen under the best human systems.''

We said, in the case of *Karnes* v. *Ramey*, 172 Ark. 125, 287 S. W. 743, that this court was committed to the doctrine that an officer's false return of service of process does not preclude one from showing the truth in a proper proceeding to be that no service was had, and thus be relieved from the burden of a judgment or decree based on a false return of service. Here, the decree recites that personal service was had, and § 8195, Pope's Digest, provides that. ''In all cases where it appears, from a recital in the records of any such court, that such notice has been given, it shall be evidence of such fact.''

We conclude that appellant has failed to overcome the presumption that she had in fact been served with process, as the record recites, at her usual place of abode.

Upon the question whether the service upon appellant in the Chickasawba district of Mississippi county will support the personal judgment in the decree rendered at a session of the chancery court of the Osceola district of Mississippi county, it suffices to say that the suit to foreclose the mortgage was a local action, which the statute required should be brought in the county, or the district of the county, where the mortgaged land was situated. Section 1386, Pope's Digest. This was in the Osceola district. In such suits it is provided by § 8198, Pope's Digest, that ''In an action on a mortgage or lien, the judgment may be rendered for the sale of the property and for the recovery of the debt against the defendant personally.'' Having the jurisdiction to foreclose the mortgage lien, the chancery court had the incidental jurisdiction of rendering personal judgment for the debt which it secured.

We have already said that the effect of the judgment of the circuit court in Missouri was not to vacate the decree of the Mississippi chancery court, Osceola district. The purpose of the proceeding in Missouri was to obtain a judgment in that state on the transcript of the judgment in the foreclosure suit. The Missouri court had the jurisdiction to determine for itself whether that

1038

decree had been rendered upon service which was suffi-cient under the laws of Missouri. But the finding and judgment of the Missouri court that the foreclosure decree had been rendered without such service does not operate to vacate the decree of a court of coordinate jurisdiction in this state that service sufficient for the rendition of the decree under the laws of this state had been had. The courts of this state have the right to con-strue their own laws and to determine their own juris-diction, and cannot be prevented from doing so by the decision of a court of a sister state. That state may not enforce our judgments and decrees, when sued upon there, but it cannot prevent us from enforcing our own judgments and decrees.

There are cases where judgments may be valid and enforceable in the states where rendered, even though they may be held invalid and unenforceable when sued on in another state. The case of *Bonnett-Brown Sales Service* v. *Utt*, 323 Mo. 589, 19 S. W. 2d 888, decided by the Supreme Court of Missouri, is such a case. There suit was brought upon a judgment rendered in the state of Illi-nois upon a note which authorized the confession of judg-ment against the maker thereof without process served upon him. The Missouri court in which this judgment had been sued upon declined to render judgment there-on, and in affirming this holding of the trial court the Supreme Court of Missouri said: ''The judgment sued on may be perfectly valid in Illinois and enforced against any property of the defendant situated in that state. But, in any event, it is void and of no force or effect in this state, for the reason that the municipal court of Chicago, in which it was rendered, did not acquire jurisdiction over the defendant.''

A similar question was presented in the case of *Grover and Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287, 11 S. Ct. 92, 34 L. Ed. 670, where it was held by the Supreme Court of the United States (to quote a headnote) that ''Although a judgment in one state against a citizen of another state, may be held valid under local laws by the courts of the former. the

courts of the latter are not bound to sustain it, if it would be invalid, but for the special laws of the state where rendered.'' The court of Missouri did not attempt to restrain the parties upon their appearance before it from attempting to enforce the judgment and decree of the court of this state. It merely refused to enforce there a judgment rendered here. We have jurisdiction to order the enforcement of the judgments and decrees of the courts of this state, which are found to be valid under the laws of this state. The decree of foreclosure of the Osceola district of Mississippi chancery court is, therefore, unaffected by the refusal of the circuit court in Missouri to give effect to it there.

The decree here appealed from must also be affirmed for the reason that no meritorious defense is shown to the cause of action originally sued upon. The execution of the note secured by the mortgage foreclosed is admitted, and no contention is made that it has been paid or otherwise discharged. Section 8249, Pope's Digest, provides that ''A judgment shall not be vacated on motion or complaint until it is adjudged that there is a valid defense to the action in which the judgment is rendered, . . . .'' We have many cases holding that this showing is a condition precedent to vacating judgments and decrees rendered without service, many of which are cited in the briefs.

The comparatively recent case of *Lambie* v. *W. T. Rawleigh Co.*, 178 Ark. 1019, 14 S. W. 2d 245, was one in which a mortgage lien had been ordered foreclosed and personal judgment rendered for the debt which it secured. In overruling the motion to vacate this judgment it was there held that ''One who is aggrieved by a judgment rendered in his absence must show, not only that he was not summoned, but also that he did not know of the proceedings in time to make a defense. (Citing cases.)''. And it was there further held that ''one who seeks to be relieved from a judgment upon the ground of unavoidable casualty, preventing a defense to the action, must show that he has a meritorious defense. (Citing cases.)'' See, also, *Horn* v. *Hull*, 169 Ark. 463, 275 S. W. 905, and cases there cited.

We conclude, therefore, that the decree of the court below refusing to vacate the decree of foreclosure is correct, and it is, therefore, affirmed.