MANN-TANKERSLY DRUG COMPANY *v.* CHEAIRS.

Opinion delivered June 10, 1905.

DRUGGIST—NEGLIGENCE.—Where plaintiffs ordered charbon vaccine from a druggist, and were furnished with blackleg vaccine instead, and took the precaution to inquire if they were the same, and were informed that they were, they had a right to rely upon the druggist's statement, and to recover the damage caused by the substitution of the one medicine for the other.

Appeal from Jefferson Circuit Court.

ANTONIO B. GRACE, Judge.

Affirmed.

*Bridges & Wooldridge,* for appellant.

Appellee was guilty of contributory negligence. 10 Am. & Eng. Enc. Law, 272; 14 Cyc. 1087; 66 Ia. 708; 94 Ia. 656, 14 Am. & Eng. Enc. Law, 115, 117; 2 Bibb, 605; 1 Ark. 31. If means of knowledge are alike accessible to both, they must be deemed to have relied on their own knowledge. 11 Ark. 58; 16 Ark. 528; 26 Ark. 28; 30 Ark. 686; 31 Ark. 170; 47 Ark. 148; 27 Ark. 250; 40 Mass. 256.

*Austin & Danaher,* for appellee.

BATTLE J. The complaint in this action was filed on April 24, 1902, and states among other things:

"The plaintiffs, J. T. Cheairs, Sr., and J. T. Cheairs, Jr., were doing business at Winchester, Ark., as partners under the firm name of J. T. Cheairs & Son; and that the defendant, Mann-Tankersly Drug Company, a corporation engaged in the drug business at Pine Bluff, Ark., sold and delivered to plaintiffs at Winchester on the ........day of .........., 1902, five cases of vaccine virus, known as blackleg virus, which is made and pre-

pared for vaccinating cattle, commonly cows, to prevent and avoid a certain disease peculiar to cattle called "blackleg." That, instead, plaintiffs had ordered and desired shipped to them certain vaccine virus with which to innoculate or vaccinate their mules and horses so as to prevent a certain disease known and called charbon or anthrax. That, upon receipt of same, they inquired of defendant to learn why blackleg virus was sent to them, stating that they were not troubled with blackleg, and that they had ordered charbon or anthrax virus, and to this inquiry defendant negligently replied that the disease known as blackleg and anthrax and charbon are the same, and, relying upon this statement, plaintiff vaccinated six horses and two mules with said blackleg virus, and that the mules and horses died from the effects of the vaccination; and plaintiffs set forth descriptions and values of the horses and mules. Plaintiff further states that the statement made by defendant that blackleg and charbon or anthrax are the same, and that blackleg vaccine or virus and charbon or anthrax vaccine or virus are the same, was and is untrue, which was unknown to plaintiffs. Plaintiffs pray for judgment against defendant for $850."

The defendant answered, and denied the allegations in the complaint, and alleged as follows:

"But, on the contrary, avers that plaintiffs were fully warned and advised that the goods they had purchased or ordered, and which had been delivered to them by other parties than the defendant, which were the same goods used by the plaintiffs, were intended to be used upon cattle only, and that the plaintiffs, without regard to their said knowledge and information, carelessly and negligently used blackleg virus upon their stock, and, by reason of the further fact that plaintiffs carelessly and negligently and unskillfully inoculated their mules and horses with said blackleg virus, their stock died. Wherefore defendant pleads the negligence of the plaintiffs in bar of this action.

"Defendant for further answer states that the plaintiffs were advised and fully aware of the fact that the goods received by them were intended for use upon cattle only, and plaintiffs negligently failed to advise defendant of such fact, and also failed

to advise defendant that they intended to use blackleg virus upon any stock other than their cattle, but, on the contrary, in conversation with representatives of the defendant, who afterwards conducted the correspondence with plaintiffs, stated and represented to the defendant that they were possessed of a large number of cattle, and desired to vaccinate them, as defendant supposed, for some disease common to cattle, whereby defendant was misled by plaintiffs, who carelessly and negligently made such representation to the defendant, so defendant pleads the carelessness and negligence of the plaintiffs in this regard in bar of this suit."

In the trial of the action evidence was adduced tending to prove, substantially, the following facts:

J. T. Cheairs & Son were engaged in farming and mercantile business. A Mr. Lawrence, a traveling salesman of Parke, Davis & Company, of Detroit, Mich., called at their place of business. Plaintiffs say they ordered him to send them anthrax or charbon vaccine; but Lawrence says that they ordered five cases of blackleg virus. The order was sent to the defendant, at Pine Bluff, Ark., to be filled; and, not having the medicine, it sent the order to Parke, Davis & Company, with directions to send the medicine directly to the plaintiffs, which they did. On receiving it, they discovered that it was blackleg virus, with the following label on it, which they read:

"Blackleg Vaccine Improved.
"For cattle only. (Double).
"Ten doses each of Nos. 1 and 2.
"DANGEROUS!
Physiologically tested.

"We would recommend that this parcel be returned after January 9, 1903, to be replaced with fresh product. This vaccine will, however, retain its potency for a much longer period, if kept under proper conditions.        845614.

"Note directions enclosed before using the vaccine.
"Keep in a cool, dark place.
"Prepared in the Biological Laboratories of
"Parke, Davis & Co., Detroit, Mich., U. S. A."

Thereupon they wrote to the defendant the following letter:

"Winchester, Ark., April 3, 1902.
"MANN-TANKERSLY DRUG COMPANY,
        "Pine Bluff, Ark.:

"Dear Sirs—We see that Parke, Davis & Company shipped us five cases blackleg virus at $2—($10). We ordered charbon or anthrax virus. Please ask why they didn't send us the anthrax virus. We are not troubled with blackleg.

                            Yours truly,
                              "J. T. CHEAIRS & SON."

And received from it the following reply:

                    "Pine Bluff, Ark., April 4, 1902.
MESSRS. J. T. CHEAIRS & SON,
        "Winchester, Ark.:

"Dear Sirs—Replying to yours of the 3d inst. regarding the blackleg vaccine, we desire to state that blackleg and symptomatic anthrax or charbonne are the same, and Parke, Davis & Company, as do several other of the manufacturers, call their preparation blackleg vaccine, instead of anthrax vaccine, it being all the same.

"Trusting that this explanation is all that is necessary, we are,                    Yours truly,
              "MANN-TANKERSLY DRUG COMPANY."

Plaintiffs, having dealt extensively with the defendant and considered it "perfectly competent," relied upon its reply, and, having successfully and with good results vaccinated "hundreds of head of cattle and horses and other animals with anthrax vaccine," did not hesitate to use the medicine in the vaccination of horses and mules; and eight of the horses and mules so vaccinated died from the effect thereof. They were estimated to be worth as much as $865. Horses and mules do not have blackleg, and blackleg vaccine administered to them frequently kills. The invoice of the medicine sent to the plaintiffs was in the name of the defendant, and not of Parke, Davis & Company.

The court instructed the jury, over the objections of the defendant, in part as follows:

"If the jury believe that the plaintiff ordered from Parke,

Davis & Company vaccine virus to prevent their livestock from contracting a disease called charbon or anthrax, that said order was sent by the agent of Parke, Davis & Company to defendant to be filled and charged by defendant to plaintiffs' account with it; the defendant, not having in stock the goods ordered, instructed Parke, Davis & Company to ship the same to plaintiffs direct; and that, instead, a vaccine virus for the prevention of a disease peculiar to cattle called blackleg, was shipped to plaintiffs, and invoiced and charged by the defendant to plaintiffs, and that, upon the receipt of the blackleg virus by plaintiffs, they informed the defendant of its receipt, and inquired to know of defendant why anthrax virus had not been shipped them, and notified the defendant that they were not troubled with blackleg; and if the jury further believe that defendant then represented to plaintiffs that blackleg virus and anthrax virus were the same, and that plaintiffs, replying upon said assurance and representations of the defendant, vaccinated their mules and horses with said blackleg virus; and if the jury further believe from the evidence that anthrax virus and blackleg virus are not the same, but different poisons, and that blackleg virus is dangerous to the life of horses or mules, and should be used only in vaccinating cattle; and if they further believe from the evidence that, by reason of plaintiffs vaccinating their mules and horses with said blackleg virus, they died, then defendant is liable to pay plaintiffs the reasonable value of all of said horses or mules which died because of such vaccination, and the jury will find for plaintiffs for the value of said horses and mules with 6 per cent, interest thereon from the date of the institution of this suit, although the jury may also believe from the evidence that the said blackleg virus was labeled 'For Cattle Only.' "

And the defendant requested, and the court refused, to give the following, among other, instructions:

"The court instructs the jury that, should they find that the defendant represented to the plaintiffs that anthrax vaccine was the same as blackleg vaccine, and in so doing did not exercise ordinary care, and was therefore guilty of negligence, and the

jury further find that the plaintiffs vaccinated their horses with blackleg vaccine, and did so, as is admitted by plaintiffs, after full knowledge and warning that blackleg vaccine was for cattle only, and that the blackleg vaccine was a dangerous preparation, and the jury find from the evidence that the horses of plaintiffs died because of the use upon them of the blackleg vaccine described by the witness, then the plaintiffs were guilty of what the law calls contributory negligence, and the jury will find for the defendant."

But did give the following, at its request:

"The court instructs the jury that it is a rule of law which must govern you in this case that when a party, such as the plaintiffs, Cheairs & Son in this case, complain that they have been damaged or sustained loss by some act which they claim was one of negligence or want of care on the part of the defendant, if it appears from the evidence that the plaintiffs, or either of them, by their own imprudence or neglect to take care as an ordinarily prudent man would have taken under similar circumstances, or disregarded such precautions as an ordinarily prudent person would have taken, and if observed would have avoided the damage, loss or injury complained of, and such negligent acts or omissions contributed directly to produce the result complained of, then plaintiffs cannot recover, and the jury will find for the defendant, although the jury finds from the evidence that the defendant was negligent as charged in the complaint."

The jury returned a verdict for plaintiffs, in the sum of $512.50. Judgment for that amount was rendered in their favor against the defendant, and it appealed.

The main question for the jury to decide, and upon which their verdict depended, was, did the appellees rely upon the statement made by appellant in its letter to them of date April 4, 1902. That question was fairly submitted to them by the instructions of the court; they found that they did; and the evidence was sufficient to sustain their verdict. They purchased the medicine from the appellant, and, thinking it was not such as they wanted or ordered, took the precaution to consult them

about it before using it; and, being informed that blackleg vaccine and anthrax vaccine are the same, and having used the latter successfully in vaccinating horses and mules, used the medicine sent with fatal effect. They informed the defendant, in their letter to it, that they were not troubled with blackleg, and gave it to understand that medicine for that disease was not needed. They undoubtedly relied upon its statement, and were led to do so by extensive dealings with it and by the belief that it was competent to advise them.

Judgment affirmed.