FIDELITY MUTUAL LIFE INSURANCE COMPANY *v.* PRICE.

Opinion delivered October 21, 1929.

*T. J. Moher, Rose, Hemingway, Cantrell & Lough-borough* and *Carmichael & Hendricks,* for appellant.

*A. G. Meehan, Peyton D. Moncrief* and *John W. Moncrief,* for appellee.

BUTLER, J. Appellee's intestate, James Arthur Price, in 1914 procured a policy of insurance from the appellant, Fidelity Mutual Life Insurance Company, in the sum of $5,000. He was at that time, or a short time thereafter, doing business with the appellant, American Southern Trust Company's predecessor, and, to secure it for any advances made, assigned the policy as collateral security. This assignment contained a stipulation giving full power to the assignee or its legal representatives to receive in any form the value thereof, in trust, without liability on the part of the company to see to the proper discharge of the trust or any part thereof. In April, 1926, this assignment was released in writing, and an

"assignment absolute" was executed, by the terms of which all the right, title and interest in and to the policy and all benefits accruing or arising therefrom were transferred without qualification. The assignee was constituted attorney with full power to do any act necessary for the enjoyment of the policy assigned, and the company was expressly authorized to make all payments under the policy to the assignee.

Price died May 31, 1927. Proof of death was made by the assignee, and on the 16th day of June, 1927, the appellant insurance company made its check for the face value of the policy, less a loan which the insured had negotiated in his lifetime, the net amount being $4,571.62. This check was duly paid, and the proceeds appropriated by the appellant bank. The appellee, R. C. Price, as administrator of the estate of James A. Price, his heirs joining with the said administrator, brought this suit against both the appellant insurance company and the appellant bank. The complaint sufficiently alleges a joint liability on the part of the appellants, on the theory that the assignment had been canceled by an oral agreement made between the appellant bank and the insured, and the policy constructively delivered to the insured, and the possession held by the bank thereafter was as agent of the insured, and that he was the owner of the policy, and his beneficiaries entitled to the proceeds at his death; that all of these facts were known to the insurance company, and that, with this knowledge, it colluded with the appellant bank to defraud the beneficiaries, and, in furtherance of the common design, accepted from the bank the policy, and made payment of the proceeds to it to enable its confederate to fraudulently convert the proceeds thereof to its own use.

This suit was filed in the circuit court of Arkansas County. Service was had upon the insurance company, and summons issued and served on the bank in Pulaski County by virtue of § 1176 of Crawford & Moses' Digest, which is as follows: "Every other action may be brought

in any county in which the defendant, or one of several defendants, resides, or is summoned.'' After service upon it, and before issue joined, the appellant bank challenged the jurisdiction of the court by its motion to quash service on it. Upon denial of its motion, proper exceptions were saved, and in its answer, after traversing the allegations of the complaint, it set up the fact that it was a banking corporation, domiciled in Pulaski County, with no branch in Arkansas County, and moved to transfer to chancery. The court sustained the motion to transfer, and the appellees (plaintiffs below) moved to dismiss as to both defendants, which motion was sustained. Thereafter the appellees filed their motion to reinstate. Appellants contested this motion, but the motion was sustained, and the cause reinstated, appellant bank appearing and contesting the motion to reinstate.

After the cause was reinstated, an amendment to the complaint and response to the motion to transfer to equity was filed, and, on a hearing of the response, the court set aside the order to transfer, and the cause then proceeded to trial, which trial resulted in a verdict and judgment for the plaintiff against both defendants in the amount sued for, to-wit, $2,997.50.

The insurance company raised no question as to the service upon it, but, before answer, moved to strike because there was a misjoinder of parties and no joint liability alleged. These motions were overruled. The insurance company answered, and, at the conclusion of the testimony, moved for a directed verdict, because the facts proved failed to establish any liability as to it. The appellant insurance company and the appellant bank filed their joint motion for a new trial, in which they preserved their objections and exceptions to the action of the court, and, their motion for a new trial being overruled, they have prosecuted this appeal.

They insist that there was no evidence tending to establish the allegations of fraudulent conspiracy of the appellants, The appellees, on their part, contend that

there is ample testimony to warrant the trial court in submitting this question to the jury. The facts relied upon to establish the allegations of fraudulent conspiracy may be thus summarized:

The insured died on or about May 31, 1927, and was buried June 2, following: On that day Mr. C. P. Ball addressed a letter to "R. C. Bright, manager of the Fidelity Mutual Life Insurance Company, Little Rock, Arkansas." Ball had been a friend of the insured, and was interested in the welfare of his family, and, moved by this, he wrote the letter, in which he informed Bright of the recitals of the decree of the chancery court entered May 28, 1928, showing that in 1922 the insured executed a mortgage on certain lands to secure an indebtedness due the appellant bank's predecessors, and had pledged two insurance policies issued by the appellant insurance company; that in the decree there was no personal judgment against the insured, and that the delivery of certain personal property, and the foreclosing of lands and sale of same to be made thereunder was in satisfaction and settlement of the indebtedness due. After making these statements, the letter concluded with the request for information relative to the status of the two policies.

On June 4, 1927, Mr. Bright answered the inquiry, stating that there had been one policy issued to the insured by his company for $5,000; that later the insured made application for another policy for $6,000, but that the last named policy was not acceptable to the insured, and was declined; that after this the $5,000 which had been pledged as collateral security was "assigned to the bank absolutely." He stated that, because of the assignment, the fact that no personal judgment was given in the decree mentioned would not serve to enable the family of the insured to receive the proceeds of the policy, but gave it as his opinion that, notwithstanding the assignment absolute, "as a matter of practice and good conscience, so far as I know, under the assignment absolute, if an equity exists it is turned over to the heirs of the

deceased." He further stated: "You know that the bank had paid the premiums for several years, and the collection of the policy will not prevent them from sustaining an actual loss."

It developed that Bright was mistaken, at least as to the payment of two past due premiums, which the assured paid through the appellant bank in April, 1926, and he also paid the premium due November, 1926, which was remitted by the appellant bank to the insurance company, with the request to mail receipt direct to the insured. Insured also paid the premium due November, 1927, by his personal check delivered to Mr. Bright. The insurance company mailed direct to assured notices of due dates of premiums. Mr. Bright, to whom the letter of Mr. Ball was written, and who received the premium check of November, 1927, was, and had been for some years, the State agent of the insurance company. He was also the owner of some three or four thousand dollars' worth of the capital stock of the appellant bank, and a director of said bank.

On the 8th day of June, 1928, proof of death was made by an officer of the appellant bank and transmitted to the insurance company, and on the 16th day of the same month the insurance company made and forwarded to the appellant bank its check for $4,571.62, net proceeds, after deducting a loan made by the insured in his lifetime on the policy. On the 13th day of July following, a son of the insured applied to Mr. Bright for forms on which to make proof of death, and was informed that proof had been already made by the appellant bank, and the proceeds of the policy paid to it. There was also evidence tending to show that there was a settlement between the bank and the insured prior to his death, and the assignment of the policy canceled.

There was no testimony showing that Bright had any part in the management of the affairs of the bank or any knowledge of the details of its business, or that he had any information regarding any settlement of the

affairs of the bank and the insured, except such as was disclosed in Ball's letter and his answer thereto, in which no knowledge was disclosed except such general knowledge as would likely be in the possession of any friend of the insured, and who had been acquainted with his business operations and the disasters attending it through several years.

Assuming that the transactions above narrated, and Bright's information was within the scope of his authority and the knowledge he gained as bank director, if any, is imputable to the insurance company (which is not necessary for us to decide, but see *Waters Pierce Co.* v. *Bridewell*, 103 Ark. 345, 147 S. W. 64, 64 Ann. Cas. 1914 B, 837, do the facts warrant the submission to the jury of the question of fraudulent conspiracy on the part of the insurance company in aid of fraudulent conduct, if any, on the part of the appellant bank? In order to establish a conspiracy to defraud, the evidence must do more than raise a suspicion; it must lead to belief. The circumstances are disconnected, and it seems only reasonable that any one or all of these circumstances are just as consistent with a lawful purpose as with an unlawful undertaking; they are "slight, equivocal, and unsatisfactory." The appellees, as we have said, insist, however, that this evidence is ample to establish the fraudulent conspiracy; that the fact that Bright was a director in the appellant bank and a personal friend of the insured, familiar with his business affairs, and that the insured's account with the bank was large—the knowledge that the insured had paid premiums after the date of the assignment, the letter of Ball and his reply—all warranted the submission of the issue to the jury and supported its finding. They say that the circumstances were sufficient to show that Bright knew that the assignment, although absolute in form, was only collateral security. If, indeed, the assignment was only collateral security, the insurance company could not be deemed to have agreed to any other conditions than those stated in the collateral

assignment which had theretofore been made, and which authorized the assignee to collect the proceeds, without liability on the part of the company to see to the proper discharge of any trust.

We see no fact from which a reasonable inference might be drawn that Bright or the insurance company had knowledge that the assignment was collateral or that the debt was paid, or knowledge of the alleged oral agreement of cancellation and redelivery of the policy to the insured. Bright testified that he had no knowledge of any such fact, and, while he was a director of the bank and had general knowledge that the insured was largely indebted to the bank, there is no testimony that he took any actual part in the management of the affairs of the bank or had any special knowledge of the extent of the insured's business, or any knowledge whatever of the alleged settlement or of the terms upon which it was made, or of the property taken or to be taken in satisfaction of the debt, or of any agreement, oral or otherwise, by which the absolute assignment was released. There is nothing in his letter to Ball to indicate any such knowledge. He merely gave Ball what information he had, namely, that there was an absolute assignment of the policy, and that the bank stood to lose a considerable sum after collecting the policy. It is true, he knew —as also did the home office of the insurance company— that the insured had paid the premiums of November, 1927, and the home office knew of the payment by the insured of the premium of November, 1926, and of past due premiums made in April preceding; but these circumstances would hardly call for any investigation of the respective rights of the bank and the insured, it not being shown that this was unusual or of any such particular significance as to call for any such investigation. Neither was the insurance company or its agent under any obligation to see that the bank properly discharged its duty to the insured. In the letter from Ball there was no intimation that the estate or heirs of the insured

would demand of the insurance company the proceeds of the policy, and nothing to warrant the belief that they intended to do so. The fact that the decree referred to provided for a judgment *in rem* only did not indicate anything further than that a personal judgment was not desired, and we fail to see how this could have indicated that the assignment had been, or ought to have been, released.

The appellees insist that Bright could have obtained all of this information on inquiry from Mr. Hicks, who appears to have been the officer in charge of the affairs of the bank, and knew whether the bank held the policy as collateral security, whether the assignment had been canceled, and whether the title to the policy reinvested in the insured. In the first place, there was no duty resting upon Bright to make any such inquiries, and, if he had, as shown by the testimony of Hicks, he would have discovered that the bank claimed the absolute ownership of the policy. The insured was indebted to the bank in excess of $50,000; the decree recited that the judgment was *in rem* only; that the mules and equipment had been delivered to the bank, and the land was to be sold in satisfaction of the debt. The policy was already assigned, the land and equipment and policy were all of doubtful value, and it might have been as reasonably concluded from a knowledge of these facts that the policy was taken into consideration, and absolutely acquired by the bank as to conclude otherwise.

In the case of *Bank of Little Rock* v. *Frank*, 63 Ark. 16, 37 S. W. 400, 58 Am. St. Rep. 65, where fraud was alleged and testimony introduced to establish it, the chancellor decreed that the facts proved were sufficient to sustain the allegation, and this court, on appeal, in reversing the cause and holding that the facts were not sufficient, among other things, said: "Fraud is never presumed, but must be proved, and the burden of proving it is upon the party alleging it. It need not be shown by direct or positive evidence, but may be proved by

circumstances. Slight circumstances, or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results, are not sufficient evidence. They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting. They may be sufficient to excite suspicion, but suspicion is not the equivalent of proof. Circumstances necessary to prove fraud must be such as naturally, logically, and clearly indicate its existence.'' Applying this rule to the facts in this case, we think that the facts did not warrant the submission of the question to the jury, and that the appellant insurance company's request for a peremptory instruction should have been granted.

As we have seen, the appellant bank moved to quash service of summons upon it, and excepted to the action of the court in overruling same. Appellees say that, by asking for a continuance, or time to file its answer, and by appearing and contesting the motion to reinstate, and by presenting and arguing its motion to transfer to chancery without saving its rights, the question of service is waived. They rely upon the cases of *Epps* v. *Sasby,* 43 Ark. 545; *Tindall* v. *Layne,* 139 Ark. 590, 214 S. W. 1, and *Sager* v. *Jung & Son,* 143 Ark. 506, 220 S. W. 801, to support their contention. It is true that, as a general rule of practice, ''any action on the part of the defendant, except to object to the jurisdiction which recognizes the case as in court, will amount to a general appearance,'' and these cases so hold. But, as the service on the bank was obtained by virtue of § 1176, C. & M. Digest, *supra,* the bank, under § 1178, C. & M. Digest, is not bound by the general rule, for it might at any time before judgment was rendered object to the jurisdiction of the court and thus preserve its rights, and if the case as to its codefendant should be dismissed or judgment rendered in favor of the codefendant, the bank would be entitled to dismissal as to it.

It follows therefore that the cause should be reversed as to the appellant bank; and the question arises, has the appeal of the bank to this court entered its appearance so that further service upon it will not be necessary, and the cause be remanded for a new trial in the circuit court of Arkansas County? The general rule is that, although the judgment was erroneously rendered in the trial court, where proper service was not had, yet an appeal to this court would render further service unnecessary, and the cause would be remanded for a new trial in the court below. This is the effect of the holding in the following cases: *Benjamin* v. *Birmingham,* 50 Ark. 433, 8 S. W. 183; *Waggoner* v. *Fogelman,* 53 Ark. 181, 13 S. W. 729; *Epps* v. *Sasby,* 43 Ark. *supra; St. L. I. M. & S. R. Co.* v. *Barnes,* 35 Ark. 95; *Adams Machine Co.* v. *Castleberry,* 84 Ark. 573, 106 S. W. 940; *Holloway* v. *Holloway,* 85 Ark. 431, 108 S. W. 837; *Beal-Doyle D. G. Co.* v. *Odd Fellows Bldg. Co.,* 109 Ark. 77, 158 S. W. 955; *Merimack Mfg. Co.* v. *Bibb,* 119 Ark. 443, 178 S. W. 403; *Tindall* v. *Layne,* 139 Ark. 590, 214 S. W. 1; *Duncan Lbr. Co.* v. *Blalock,* 171 Ark. 397, 284 S. W. 15; *Purnell* v. *Nichol,* 173 Ark. 496, 292 S. W. 686; *Federal Land Bank of St. Louis* v. *Gladish,* 176 Ark. 267, 2 S. W. (2d) 696.

An examination of all these cases will disclose, however, that in none of them was service had on the appellee by virtue of § 1176, C. & M. Digest, *supra,* but in each of the cases none of the defendants were residents of the county in which suit was brought, and that § 1178, C. & M. Digest, *supra,* had no application.

The only one of the above cases which might appear not of this class is that of *Beal-Doyle D. G. Co.* v. *Odd Fellows' Bldg. Co., supra,* but a careful examination of that case will disclose that there was but a single defendant, for the complaint showed that the defendant who was sued and served in Clay County was sued and served merely as the agent of the Beal-Doyle D. G. Co., so that the legal effect was but one defendant, Beal-Doyle Co., domiciled in Pulaski County, no cause of action being al-

leged against the resident defendant except in his representative capacity.

*Seelbinder* v. *Witherspoon,* 124 Ark. 331, 187 S. W. 325, was a suit like the instant case, and the court in that case held that under the statute the defendant, improperly served, and who made his objection before judgment, was entitled to have the case dismissed against him, where no judgment was rendered against his codefendant, and that an appeal from the judgment against him was not a waiver, and did not enter his appearance, and the case against him should be dismissed on appeal. In the recent case of *Federal Land Bank of St. Louis* v. *Gladish, supra,* the court reviewed the cases, and has clearly drawn the distinction, and shown that the case of *Seelbinder* v. *Witherspoon, supra,* is in no sense in conflict with the general rule announced in the cases above, but is governed by the express terms of the statute. The rule announced in the case of *Seelbinder* v. *Witherspoon, supra,* is applicable to the instant case, and controls it. As we have seen, there was no testimony to establish joint liability in the court below, and a verdict for the insurance company should have been directed. The judgment in this court dismissing the case as to the insurance company is therefore equivalent, and in legal effect the decision in the court below.

We have purposely refrained from discussing the question of the liability of the appellant bank to the administrator of the insured, for it is neither necessary nor proper, in our opinion, to discuss the facts relative to that issue.

It follows that the judgment of the trial court must be reversed, and the cause is dismissed as to both the appellants, without prejudice to the rights of the appellees to further proceedings against the appellant bank.