## WILLIAMS et al. v. OKLAHOMA TIRE & SUPPLY CO.
### Civ. A. No. 405.

United States District Court
W. D. Arkansas, Hot Springs Division.
July 9, 1949.

William H. Donham and Henry Donham (of Donham, Fulk & Mehaffy), Little Rock, Ark., C. Floyd Huff, Jr., Hot Springs, Ark., for plaintiffs.

Edward L. Wright (of Buzbee, Harrison & Wright), Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

### Statement and Abstract of Pleadings

This cause was tried to the Court without the intervention of a jury on June 2 and 3, 1949.

At the conclusion of the introduction of the testimony the case was submitted and the parties were allowed time within which to file briefs in support of their contentions.

The briefs have been received with the requests of the attorneys for findings of fact and conclusions of law and have been considered along with the pleadings and all of the testimony and exhibits thereto.

The Court has prepared and filed its formal Findings of Fact and Conclusions of Law, separately stated, which will not be hereinafter set forth in extenso, but only such facts as are necessary to a clear understanding of the issues will be mentioned.

In view of the earnest contention of the learned attorneys for the defendant that the evidence is insufficient to establish negligence on the part of the defendant and, since the findings of fact above referred to disclose actionable negligence on the part of the defendant and the conclusions of law establish liability upon the defendant for a substantial sum of money, the Court feels that it should set forth briefly some of the reasons which have impelled it to hold the defendant responsible to the plaintiffs for the damages suffered by them.

At a pre-trial conference, the plaintiffs abandoned the allegations in their complaint relative to a warranty, either express or implied, and rest their case entirely upon the allegations that the defendant was guilty of negligence which proximately caused the damage suffered by them.

On March 8, 1948, the plaintiffs, Thomas F. Redick and wife, Myrtle Redick, purchased a Perfection Oil Range, Model 888, from the defendant, Oklahoma Tire & Supply Company, which stove was moved to the residence of the purchasers where it was installed by them and used as a cook stove.

At that time the plaintiff, Helen Redick Humphrey, was a member of the Redick household and she assisted her mother, Mrs. Myrtle Redick, in doing the cooking and other household work.

The other plaintiffs, J. C. Williams, J. H. Lowery, J. W. Spence and H. H. Jeffries, were copartners and engaged in business under the style and name of Purity Ice and Ice Cream Company. The partnership owned a large and valuable dairy fully equipped, which was being operated by the plaintiffs, Thomas F. Redick and wife, Myrtle Redick. The Redicks lived in a house immediately adjacent to the dairy plant or barn, which was connected with the barn by a passageway leading from the second story of the residence to the second story of the barn or dairy plant.

The Redicks began the use of the stove immediately after its purchase and continued its use until December 5, 1948, at which time the stove burst into flames that resulted in the burning of the living quarters of the Redicks and all of their household goods therein, as well as certain dairy equipment and appliances owned by Thomas F. Redick. The dairy barn and plant was likewise destroyed together with all equipment and contents, and plaintiff, Helen Redick Humphrey, received second degree burns at the time the stove burst into flames.

After alleging the necessary jurisdictional facts and the interest of the various parties, the complaint states:

"That upon the purchase and delivery of the said stove, as aforesaid, the plaintiffs, Thomas F. Redick and Myrtle Redick, placed the said stove in their living quarters on the premises as hereinabove described and placed the said stove in operation in accordance with the directions and instructions furnished them by defendant and endeavored to operate the stove, their method of operation being the usual method of operating kerosene stoves of that kind as per instructions as above set out; and the plaintiffs, upon operating the said stove, discovered that the burners in the oven of said stove did not function properly and gave off an obnoxious odor and soot and caused the enamel on the door of the oven of the stove to become discolored."

That during the early part of April, 1948, they complained to the defendant that the stove was not functioning properly and requested the defendant to examine and inspect the stove and to correct its mal-function; that the defendant promised the plaintiffs that it would send some person to inspect the stove and to make necessary repairs and adjustments; that during the latter part of May, 1948, a further complaint was made by the plaintiffs and the defendant sent to the home of the Redicks one of its employees for the purpose of making an inspection; that the said employee of the defendant inspected the stove

and assured the Redicks that there was nothing wrong with the stove and that it was functioning properly.

That, following the inspection by the representative of the defendant made in the latter part of May, 1948, the plaintiffs again complained that the stove was not operating properly and a representative of the defendant, accompanied by a representative of the manufacturer of the stove, called at the Redick home but did not find any one there and they left some additional copies of the instructions in the form of pamphlets. On July 14, 1948, the representative of the defendant and the representative of the manufacturer of the stove again called on the Redicks and discussed the operation of the stove with the plaintiff, Mrs. Myrtle Redick, and possibly with the plaintiff, Mrs. Helen Redick Humphrey. That said representative of the defendant and the representative of the manufacturer of the stove advised the plaintiffs that the stove was functioning properly and that there was nothing wrong with it; that it was not dangerous to operate and, relying upon such representations, the plaintiffs continued to use the stove.

That the stove continued to give off offensive odors and soot and continued to discolor the porcelain at the top of the lower oven door. Early in the fall of 1948 such condition became worse and the flames in the chimneys of the burners in the oven would ofttimes flare up and reach a height of six or eight inches in the chimneys; that further complaint was made by the plaintiffs to the defendant and the plaintiffs advised the defendant fully as to the manner in which the flame in the chimneys of the oven burners would flare up, and again the defendant promised that it would cause the stove to be inspected within the immediate future and that they would send an expert to inspect and repair the stove.

That the defendant carelessly and negligently failed and refused to inspect the stove as promised on the various occasions; and about two weeks prior to December 5, 1948, the plaintiffs again complained to the defendant and stated that it had failed to have the stove inspected and again the defendant promised to send a stove repairman out to inspect the stove, but that the defendant negligently and carelessly failed to send such inspector and repairman; that about 1 o'clock p. m. on December 5, 1948, while the plaintiff, Mrs. Helen Redick Humphrey, was operating the stove and was baking biscuits in the oven thereof, the oven compartment burst into flame which resulted in damage to the various plaintiffs.

That the defendant negligently failed to fulfill its duty to the plaintiffs and because of such negligence the plaintiffs suffered damages solely because of said negligence of the defendant, its agents and employees; that neither the plaintiffs, Thomas F. Redick and Myrtle Redick, his wife, nor the plaintiff, Mrs. Helen Redick Humphrey, nor the plaintiffs composing the partnership were in any wise negligent in causing or contributing to the cause of the damage and injuries suffered by them.

In Paragraph 15 of the complaint it is alleged:

"That the said defendant was negligent in the following particulars, to-wit:

"(a) In failing to discover the defects of the stove by reason of the inspection thereof by its agents and employees when the stove was inspected in May and in July, and in assuring the plaintiffs that the stove was functioning properly, when in truth and in fact the defendant knew or should have known that the stove was not functioning properly.

"(b) In its failure to fulfill its several promises made to the plaintiffs in the fall of 1948 and immediately preceding the fire that it would have the said stove inspected.

"(c) In failing to properly test whether or not the said stove was in a mechanical condition that it could be operated safely.

"(d) In failing to properly test and determine whether or not the lines, valves, burners and other equipment constituting the construction of the said stove were operating properly.

"(e) In failing to exercise a degree of care and caution ordinarily exercised by manufacturers, merchants, and repairmen

in dealing with such mechanisms, equipment and instrumentalities.

"(f) In failing to discover defects in the said stove before selling and delivering the same to the plaintiffs, Thomas F. Redick and Myrtle Redick, his wife.

"(g) In selling and delivering the defective stove to the plaintiffs, Thomas F. Redick and Myrtle Redick, his wife."

The defendant in its answer admits that the plaintiff, Thomas F. Redick, purchased the stove for a total consideration of $169.-47, which amount was paid by him, but denies that the Redick family operated and used the stove in accordance with the directions and instructions of the defendant. It admits that one of its representatives accompanied by a representative of the manufacturer of the stove inspected the stove sometime in the summer of 1948 at the residence of the Redick family and told them that if the stove was operated pursuant to instructions and directions previously furnished the stove would function properly.

The defendant denies that it was negligent in any manner as alleged in the complaint and alleges that, if the plaintiffs sustained the damage alleged by them, such damage and injury resulted from the failure and refusal of the members of the Redick family to use and operate the stove in accordance with the directions and instructions given them, and that such damage and injury resulted from the negligence of the members of the Redick family or a risk assumed by them.

The defendant further alleges:

"Defendant states that it was and is a retailer of kitchen equipment, household goods and other merchandise. It purchased the stove in question in good faith from Perfection Stove Company, Cleveland, Ohio, which is a reputable manufacturer of kerosene stoves with sixty years experience in manufacturing stoves of this type. Defendant sold and delivered the stove in exactly the same condition and in the same package received by it from Perfection Stove Company, and did nothing to alter the mechanical construction and condition of the stove. At the time plain-tiff, Thomas F. Redick, purchased the stove from the defendant, he was thoroughly familiar with the make, type and model of the stove and he purchased the stove in furtherance of and reliance upon demonstrations and exhibitions of the stove made elsewhere than in the store of the defendant or by and in behalf of the representatives of the defendant. He purchased the make, type and model of the stove he desired and the stove was sold and delivered by defendant without warranty, representation, statement or promise and without a change in its condition by the defendant."

## Opinion

The questions for determination are:

1. Was the damage that resulted from the fire due to a defect in the kerosene stove?

2. Was the defendant negligent in not discovering and repairing the defect?

3. Were the members of the Redick family negligent in the operation of the stove or did they assume the risk of the operation after having made complaints to the defendant of the mal-functioning of the stove?

There is complete diversity of citizenship between all of the plaintiffs and the defendant. More than $3,000.00, exclusive of interest and costs, is involved, and the transactions and acts upon which the claims of plaintiffs are based all occurred in Arkansas. Therefore the law of Arkansas controls and governs the rights of the parties. Erie Railroad Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

It is the theory of the plaintiffs that the fire was caused by a leak on or near a burner of the oven compartment of the stove.

It is the contention of the defendant that the testimony is insufficient to establish negligence on its part which proximately caused the fire and resulting damage.

The defendant in its brief states:

"Plaintiffs have utterly failed to adduce a factual circumstance from which the con-

clusion can be drawn that a leak in truth existed, or that, assuming the leak, the defendant was negligent in failing to discover its presence."

■ The burden was upon the plaintiffs to prove by a preponderance of the evidence that the damage was proximately caused by the negligent acts or omissions as alleged in the complaint and a trier of fact is not permitted to guess or speculate as to the proximate cause of an injury. In the case of National Life & Accident Insurance Company v. Hampton, 189 Ark. 377–379, 72 S.W.2d 543, 544, the Court stated:

"It is the well-settled doctrine in this State that a jury's verdict cannot be predicated upon conjecture or speculation. St. Louis I. M. & S. Ry. Co. v. Enlow, 115 Ark. 584, 171 S.W. 912; St. Louis I. M. & S. Ry. Co. v. Belcher, 117 Ark. 638, 175 S.W. 418.

"Mr. Justice Brewer in Patton v. Texas & Pacific Ry. Co., 179 U.S. 658, 21 S.Ct. 275, 277, 45 L.Ed. 361, tersely stated the doctrine as follows:

" 'It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. And where the testimony leaves a matter uncertain and shows that any one of a half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion.'

"And without adding to or subtracting from the rule thus stated, we announce our approval thereof."

See also, Turner v. Hot Springs Street & Ry. Co., 189 Ark. 894, 75 S.W.2d 675; Coca Cola Bottling Co. v. Wood, 197 Ark. 489, 123 S.W.2d 514; Coffman v. Southern Coal Co., D.C., W.D.Ark., 52 F.Supp. 351; and Williams, Administrator, v. Lauderdale, 209 Ark. 418, 191 S.W.2d 455.

In the case of Fort Smith Gas Company v. Blankenship, 193 Ark. 718–721, 102 S. W.2d 75, 76, the Court said:

"The indulgence of inferences will not supply a nonexistent fact. Inferences to support a verdict arise out of facts established by evidence. Other inferences are purely speculative or may be guess work or conjecture. This method of dealing with the rights of parties has been condemned by many decisions. (Citing cases.)"

■ Under the rule the Court cannot speculate nor indulge in inferences based upon inferences, but a finding of negligence must be based upon evidence or the evidence must point to the fact, and inferences can only be drawn from facts established by the evidence.

■ The Court in the case of Missouri Pacific Transportation Company v. Jones, 197 Ark. 79–83, 122 S.W.2d 613, 615, said:

"It is not sufficient for a person to show that the defendant may have been guilty of negligence. The evidence must point to the fact that it was guilty of negligence. But this does not have to be shown by direct testimony, nor to a mathematical certainty."

■ In appraising the testimony and determining what the facts are the Court should consider all the testimony and the circumstances surrounding the parties. In Kincade v. Mikles, 8 Cir., 144 F.2d 784–787, the Court said:

"Any fact, even the commission of a felony, may be established by circumstantial evidence and negligence may be so established. (Citing cases.)"

■ In Arkmo Lumber Company v. Luckett, 201 Ark. 140–146, 143 S.W.2d 1107, 1110, the Court said:

"Substantial evidence does not necessarily mean direct evidence. A fact may be proved by circumstances.

" 'The settled rule, which has been many times approved by this court, is that a well-connected train of circumstances is as cogent of the evidence of a fact as an array of direct evidence, and frequently outweighs opposing direct testimony,

and that any issue of fact in controversy can be established by circumstantial evidence when the circumstances adduced are such that reasonable minds might draw different conclusions.' (Citing many cases.)"

The quotation from the Arkmo, Lumber Company case, supra, was quoted with approval in the case of Phillips Motor Company v. Price, Adm'x, 204 Ark. 827–833, 165 S.W.2d 251.

The defendant operates a retail store in Hot Springs, Arkansas, where it sells kerosene stoves and practically everything needed or required in a home. The stove in question was manufactured by the Perfection Stove Company, Inc., Cleveland, Ohio. The particular stove was the latest model, No. 888, and was purchased by the defendant for re-sale. The defendant was unable to state how the stove was delivered, whether by private truck carrier or public truck carrier or by railroad and did not know whether the stove came from a warehouse in Tulsa or Kansas City or whether it came direct from the factory in Cleveland, Ohio. The representative of the manufacturer testified that the stove was shipped from the factory to the Kansas City warehouse and from there to defendant at Hot Springs, Arkansas. It was in a crate when delivered to the defendant's store and the crate was removed and the stove placed in the show window where it remained until Redick purchased it.

No inspection whatsoever was made by the defendant or any of its employees at the time the stove was received or at the time of the sale and delivery to Redick. In the directions for operating the stove, under Question 13, the following statement appears:

"To guard against leaks, every stove is tested with air pressure, and also filled with oil and operated before leaving factory. However, sometimes excessive jarring or vibration in transit loosens the burner joints or pipe cap, and causes a slight leak at these points.

"To correct a leak at burner joint, simply tighten the setscrews in the clamp which holds the burner to the feed pipe. In tightening the set screw, be careful not to screw it up so tightly that you injure the soft lead seat under the burner connection."

In answer to another question the following appears:

"Occasionally these stoves receive a great amount of abuse in shipping. In case this abuse causes the burner chimneys to be off center with the grate hole, the burner can be easily straightened by slightly loosening the burner clamp setscrew, as shown in Fig. Thirteen, and forcing the burner forward or backward as needed, after which, while holding the burner in place, tighten the burner securely.

"The soft lead seat under the burner connection will re-form to suit the new position of the burner. A pair of pliers or a wrench can be used to loosen and tighten the clamp screw."

Complaint was made by the Redicks soon after the stove was purchased and installed. During the latter part of May, a representative of the defendant called on the Redicks but made no more than a perfunctory inspection and advised the Redicks that there was nothing wrong with the stove. The stove continued to emit odors and soot and the burner under the oven would occasionally flare up. Further complaints were made, and finally on July 14 the said representative of the defendant and a representative of the manufacturer called on the Redicks and, after a more or less perfunctory examination and inspection, they advised the Redicks that the stove was in good condition and could be safely used, so the Redicks continued to use the stove. At that time the persons who had been sent to inspect the stove and to find the reasons why the stove was not properly functioning requested Mrs. Redick to demonstrate how she operated the stove and, when the demonstration was completed, they advised her that her method of operation was in accordance with the instructions and that the stove would function properly, but it did not function properly and other complaints were made, the last one about two weeks before the fire occurred. The defendant was fully advised of the various complaints but yet only perfunctorily in-

spected the stove on two different occasions. It did not inspect the stove or the burner for leaks although one of the inspectors testified that he did not see any fuel in the drip pan.

It is not disputed that the plaintiffs suffered the damages alleged in the complaint as a result of the fire. The defendant's sole contention is that the evidence is not sufficient to show actionable negligence on its part.

The representative of the defendant and the representative of the manufacturer testified that the first complaint was that the door to the oven had become discolored. The Redicks denied that •was their only complaint and stated specifically that they advised the representative of the defendant as well as the representative of the manufacturer of the many mal-functions of the stove and all facts known to them. The Court has found that the Redicks did in fact fully advise the representative of the defendant relative to the action of the stove, yet the inspectors made no thorough inspection. The defendant, in its brief, claims that the cause of the mal-functioning of the stove was improper operation by the Redicks and refers particularly to Question No. 5, which is: "What causes the flame to smoke?" The answer is as follows:

"This may be due to any one of the following:

"(a) Wick turned so high it touches flame-spreader. It is very important to keep a space between wick and flame-spreader. (See Fig. Nine.)

"(b) Wick is dirty.

"(c) Turned to highest flame before burner had a chance to get well warmed up.

"(d) Wick may be uneven. Should be level with wick tubes as explained in Question No. 8.

"(e) Airholes around bottom of chimney may be stopped up by boiled over food, lint, dust, etc., thus preventing the proper circulation of air. Inspect the chimneys occasionally and keep these holes open.

"(f) Mica may be broken in window. Broken mica should be replaced with new.

"(g) Holes in flame-spreader may be clogged up. Always keep these open or you will not secure perfect circulation of air. An old toothbrush will clean the flame-spreader very nicely.

"(h) Drum may not be seated snugly on collar.

"(i) Collar ring is not pushed down on brass burner tube as far as it will go."

Both inspectors approved the method of the operation of the stove as demonstrated by Mrs. Redick in their presence, yet notwithstanding the proper operation the stove would occasionally smoke, emit soot and fumes and the blaze would flare especially in the oven burner. The defendant was fully advised and did nothing to adjust the stove or to determine the cause of any of the things above enumerated.

The fact that the fire occurred cannot be considered by the Court as any proof of negligence on the part of the defendant, but the cause of this fire could have been determined by a reasonable inspection by the defendant. Such an inspection was not made. It is immaterial whether the failure to make such inspection was because of ignorance or negligence.

In Restatement of the Law, Torts, Volume 2, Section 402, under Comment A, the following appears:

"The rule stated in this section requires the retail or wholesale dealer to utilize not only the special opportunities which he has to observe the condition of the goods, but also the special competence which he, as a dealer in such goods, should have to realize the dangerous implication of conditions which though observable by the customer are not likely to be appreciated by him. His failure to inform his vendees that the goods are or are likely to be dangerous is not excused by his ignorance thereof, if his ignorance is due to his failure to utilize his special opportunities and exercise his special competence for the purpose of discovering whether the goods are or are not safe for the use for which they are sold."

The defendant did not know whether the stove was in a safe condition for use when it was delivered to Redick because, notwithstanding it had been transported in some

manner from somewhere to Hot Springs, the defendant did not even casually inspect it to ascertain whether the stove would leak fuel or whether it was in proper alignment or do anything that an ordinarily prudent dealer would have done.

█ The rule as stated in Section 402, supra, is as follows:

"A vendor of a chattel manufactured by a third person is subject to liability * * * if, although he is ignorant of the dangerous character or condition of the chattel, he could have discovered it by exercising reasonable care to utilize the peculiar opportunity and competence which as a dealer in such chattels he has or should have."

The statement last above quoted was approved in the case of Ahrens v. Moore, 206 Ark. 1035, 178 S.W.2d 256. See, also, 46 Am.Jur., Sales, Section 817, Page 943.

█ It is now generally held that a dealer who sells an article of merchandise is liable for an act of negligence that results in injury or damage to some other person and which is the natural and probable consequence of such negligent act. Carter v. Yardley & Co., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559; Chapman Chemical Co. v. Taylor, Ark., 222 S.W.2d 820.

█ It is immaterial whether or not the conduct of the defendant amounted to a breach of the contract of sale between it and Redick. The duty of the defendant in this case was not created by contract but arose from the general human duty not to injure another through disregard for his safety.

In MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A. 1916F, 696, Ann.Cas.1916C, 440, Mr. Justice Cardozo, said:

"We have put aside the notion that the duty to safe-guard life and limb, when the consequence of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law."

The rule is the same where the injury is to real property as where the injury is bodily harm. Restatement of the Law, Torts, Sec. 497, Page 1287.

The Redicks had the right to expect the defendant to use ordinary care to inspect and to deliver to them a stove suitable for the purpose for which they were purchasing it. The stove did not function properly and the cause of the mal-function could have been discovered by a reasonable inspection by an ordinarily competent dealer. This duty of inspection was owed by the defendant to the Redicks and it failed to make such inspection notwithstanding instructions from the manufacturer it was usually necessary to make an inspection and test the stove to determine whether or not it had been abused in transportation and whether all parts were in proper alignment.

█ The plaintiffs had a right to rely upon the superior knowledge of the defendant and to act upon the representations of the representative of the defendant that the stove could be used with safety and are not guilty of contributory negligence by continuing to use the stove. The defendant knew what the plaintiffs were doing and how they were operating the stove. Instead of taking the time to make a thorough inspection it chose to take a chance in utter disregard of its obligation to the plaintiffs and must bear the consequences. Mann-Tankersley Drug Co. v. Cheairs, 75 Ark. 596, 88 S.W. 873; Ahrens v. Moore, supra.

█ It is no defense for the defendant to say that it was merely a dealer and that it relied upon the skill of the manufacturer to properly construct the stove. The stove was not in sealed or enclosed package. It was uncrated in the store of the defendant and was subject to inspection for such imperfections as might be discovered by the exercise of the care, skill and experience of an ordinarily competent dealer in stoves of that kind. See, Coca Cola Bottling Co. v. Swilling, 186 Ark. 1149, 1152–53, 57 S.W.2d 1029.

The defendant suggests that the flames in the stove were created through the use by the Redicks of fuel mixed with gasoline or some other substance, but that suggestion is contrary to the positive testimony in

the case. There was no use of improper fuel by the Redicks and the uncontradicted testimony of Mrs. Helen Redick Humphrey, Mrs. John D. Little and Mrs. Harold H. Jeffries was that the stove was operating properly only two or three minutes prior to the discovery of the fire. Mrs. Harold H. Jeffries testified that she opened the oven door two or three minutes before the explosion or fire occurred and at that time the flames were not high, there was no smoke or soot and the biscuits that were being baked were not discolored in any manner. Yet, within two or three minutes from that time, the entire stove was afire and the flames were spreading rapidly over the building.

The testimony disclosed that kerosene is difficult to confine because of its excess volatility or fluidity. This excessive volatility was well known to the defendant and, if an inspection had been made by its representative to determine whether a leak in the fuel line or the elbow joining the fuel line to the burner in the oven existed, then all danger of fire would have been prevented and the failure to make this inspection and to repair was the proximate cause of the fire and damages suffered by plaintiffs. The Court found the facts on this question to be as follows:

"13. It would have been impossible for a fire of the magnitude of the one that injured plaintiffs to have occurred in the ordinary and careful operation of the stove if a leak had not existed and if the kerosene had not escaped through such leak. Once kerosene begins to leak the constant use of a burner will tend to increase the size of the leak and naturally the danger of a fire is proportionately increased.

"14. A careful inspection of the burner by a competent inspector would have disclosed the location and extent of the leak and the cause thereof, but such inspection was not made although often requested of the defendant by the plaintiffs.

"15. The plaintiffs relied upon the judgment of the representative of the defendant who was accompanied by a representative of the manufacturer to the effect that there were no defects in the stove and con-tinued to operate the stove in a proper manner and in accordance with the instructions until the fire occurred, which, of course, destroyed the stove and other property of the plaintiffs.

"16. The stove was in continuous use from the day following its purchase on March 8 until December 5, 1948, although it did not function as it should have nor in the manner represented by the literature issued by the manufacturer. The defendant in its brief and argument states: There are two plausible explanations of the fire. One is the use of a fuel of greater volatility than kerosene. * * * The other possible explanation is the ignition of an accumulation of grease or other inflammable material inside the oven.

"As heretofore stated in finding No. 8 only kerosene purchased from a reputable dealer was used in the stove, and there is no testimony that even suggests any 'accumulation of grease or other inflammable material inside the oven'. On the other hand the positive testimony is that there was no such accumulation. Both Mrs. Redick and Mrs. Humphrey appeared to be industrious and very neat and careful. Their appearance was convincing that neither would have permitted any such accumulation to remain inside the stove.

"17. A consideration of all the testimony and circumstances disclosed by the evidence convinces that the allegations of plaintiffs are true; that the fire was caused by an accumulation of kerosene and inflammable gas created by the heat of the oven and oxygen supplied suddenly by the opening of the oven door by Mrs. Humphrey in the operation of the stove.

"This could and would have been prevented if the defendant had exercised reasonable care and utilized the competence of an ordinary dealer in making an inspection which was often requested by the Redicks."

The facts established by positive evidence are such as to raise a reasonable inference that the fire was caused by a leak in or near the oven burners and such defects could and would have been discovered by an inspection made by an ordinarily competent dealer. In truth and fact the proof

excludes all causes other than the negligence of defendant and the defendant is liable for the damages caused by the fire. Curtis v. Sears-Roebuck & Company, 298 Mich. 539, 299 N.W. 706, and Gimino v. Sears-Roebuck & Company, 308 Mich. 666, 14 N.W.2d 536.

The amount of damages sustained by the plaintiffs is not seriously contested and the court has fixed such amounts in the findings of fact.

The plaintiffs are entitled to judgment in accordance with the formal findings of fact and conclusions of law, separately stated and filed with the Clerk of the Court.